1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RICHELLE C. LANGDON,

                        Plaintiff,

     v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                  Defendants.

Case No. 3:16-cv-05871-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Richelle C. Langdon has brought this matter for judicial review of the Commissioner's

denial of her applications for disability insurance and supplemental security income (SSI)

benefits. The parties have consented to have this matter heard by the undersigned Magistrate

Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the

reasons set forth below, the Court finds that the Commissioner's decision to deny benefits should

be reversed and remanded for further administrative proceedings.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

On May 7, 2012, Ms. Langdon filed an application for disability insurance benefits. Dkt.

8, Administrative Record (AR) 22. She also filed an application for SSI benefits on July 5, 2012.

*Id.* She alleged in both applications that she became disabled beginning January 6, 2011. *Id.* Both

applications were denied on initial administrative review and on reconsideration. *Id.* A hearing

was held on April 1, 2014, before an administrative law judge (ALJ). *Id.* Ms. Langdon appeared

and testified, as did a vocational expert. AR 44-101.

In a written decision on April 20, 2015, the ALJ found that Ms. Langdon could perform her past relevant work and therefore was not disabled. AR 22-36. The Appeals Council denied Ms. Langdon's request for review on September 7, 2016, making the ALJ's decision the final decision of the Commissioner, which Ms. Langdon then appealed in a complaint filed with this Court on October 11, 2016. AR 1-4; Dkt. 3; 20 C.F.R. §§ 404.981, 416.1481.

Ms. Langdon seeks reversal of the ALJ's decision and remand for further administrative proceedings, arguing the ALJ erred:

(1)     in determining Ms. Langdon's severe impairments;

(2)     in evaluating the medical evidence;

(3)     in assessing Ms. Langdon's residual functional capacity (RFC); and

(4)     in finding Ms. Langdon could perform other jobs existing in significant numbers in the national economy.

For the reasons set forth below, the Court agrees that the ALJ erred in evaluating the medical opinion evidence regarding Ms. Langdon's mental health, and consequently in assessing Ms. Langdon's RFC and finding that she could perform other jobs in the national economy. The Court therefore reverses the decision to deny benefits and remands for further administrative proceedings.

<u>DISCUSSION</u>

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See id*. At issue here is the ALJ's determination at step two that certain conditions are not severe impairments, his weighing of different pieces of medical

1    evidence, and his resulting assessment of Ms. Langford's RFC and conclusion that she could

2    perform jobs in the national economy.

3        This Court affirms an ALJ's determination that a claimant is not disabled if the ALJ

4    applied "proper legal standards" in weighing the evidence and making the determination and if

5    "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*,

6    785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is "'such relevant evidence as a

7    reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, No.

8    15-16277, —— F.3d ——, 2017 WL 2925434, at *7 (9th Cir. July 10, 2017) (quoting

9    *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires

10   "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting

11   *Desrosiers*, 846 F.2d at 576).

12       This Court will thus uphold the ALJ's findings if "inferences reasonably drawn from the

13   record" support them. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir.

14   2004). If more than one rational interpretation can be drawn from the evidence, then this Court

15   must uphold the ALJ's interpretation. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

16   I.  The ALJ's Step Two Determination

17       At step two of the evaluation process, the ALJ must determine if an impairment is

18   "severe." 20 C.F.R. § 416.920. An impairment is "not severe" if it does not "significantly limit"

19   a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. §

20   416.920(a)(4)(iii); Social Security Ruling (SSR) 96-3p, 1996 WL 374181, at *1. Basic work

21   activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b);

22   SSR 85- 28, 1985 WL 56856, at *3.

23       An impairment is not severe if the evidence establishes only a slight abnormality that has

24   "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL

25

56856, at *3; *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). A claimant must prove that her "impairments or their symptoms affect her ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry, however, is a *de minimis* screening device used to dispose of groundless claims. *Smolen*, 80 F.3d at 1290.

Ms. Langford asserts that the ALJ failed to properly evaluate the evidence that four types of condition—chronic abdominal pain, organic brain syndrome, personality disorders, and learning disabilities—are severe impairments. The Court disagrees.

First, Ms. Langdon presents no evidence that she suffered from personality and learning disorders other than the list of medically determinable impairments noted by the state agency reviewing psychologist, Dr. Cynthia Collingwood. AR 219. The only opinion evidence regarding Ms. Langdon's mental health that Dr. Collingwood reviewed was Dr. David Dixon's. AR 212-17. Dr. Collingwood wrote "personality & learning d/o" in her summary of Dr. Dixon's findings. AR 218. But Dr. Dixon wrote "none" in the space for "Personality and Learning Disorders" in his evaluation. AR 834. Dr. Collingwood did not elaborate on her note. Thus, the Commissioner is correct that Dr. Collingwood's listed diagnoses of personality and learning disorders appears to be a transcription error. Dkt. 16, p. 2. In any case, the ALJ was not obligated to find that every diagnosis on that list was a severe impairment at step two. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (ALJ evaluates inconsistencies in evidence in first instance). Ms. Langdon had the burden of showing she suffered from personality and learning disorders that impacted her ability to work, and the ALJ did not err in determining that she failed to do so. *See Edlund*, 253 F.3d at 1159-60.

1        Second, Ms. Langdon presents no evidence that she suffered from organic brain

2  syndrome, either. As with personality and learning disorders, Ms. Langdon appears to base this

3  contention solely on the list of diagnoses in Dr. Collingwood's review. Again, Dr. Dixon's

4  opinions were the only ones Dr. Collingwood consulted. *See* AR 212-17. Dr. Dixon did not

5  diagnose a condition called "organic brain syndrome." He did, however, diagnose "Cognitive

6  Disorder, Not Otherwise Specified," citing listing 294.9 in the DSM-IV. AR 834. Dr.

7  Collingwood noted that condition in summarizing Dr. Dixon's conclusions. *See* AR 218. But in

8  listing diagnoses, Dr. Collingwood instead wrote "Organic Brain Syndrome," citing listing 2940

9  in the DSM-IV. The ALJ found "Cognitive Disorder, Not Otherwise Specified" to be a severe

10  impairment, but not "Organic Brain Syndrome." AR 25, 27. Thus, if the two terms describe the

11  same impairment, then any error was harmless because the ALJ found cognitive disorder NOS to

12  be severe and considered its effects at a later stage. *See Lewis v. Astrue*, 498 F.3d 909, 910-11

13  (9th Cir. 2007) (holding that failure to list impairment as severe at step two may be harmless

14  where ALJ considered associated limitations at step four). And although Ms. Langdon asserts

15  that the two conditions are different, she provides no evidence for that proposition other than a

16  citation to an internet dictionary. Dkt. 19, pp. 1-2 & n.1. Nor does she introduce any evidence

17  from an examining or treating physician that she suffers from organic brain syndrome. In either

18  case, then, the ALJ did not err in omitting organic brain syndrome at step two.

19        Finally, any error the ALJ committed in omitting chronic pain as a severe impairment

20  was also harmless. The ALJ thoroughly discussed Ms. Langdon's history of abdominal pain and

21  physicians' attempts to determine its cause. AR 25-26. He noted that the physician who treated

22  Ms. Langdon for abdominal pain in July 2013 diagnosed alcoholic pancreatitis. AR 26; *see* AR

23  933-34. The ALJ also noted Ms. Langdon's history of back pain, which a radiologist attributed to

24

25

1   degenerative disc disease. AR 26, 819; *see* AR 690-91, 739-40. The ALJ found both pancreatitis

2   and degenerative disc disease of the lumbar spine to be severe impairments. AR 25-26.

3         Although the Commissioner contends that the ALJ could not err in omitting chronic pain

4   syndrome at step two because pain is a symptom and not an impairment, this Court has

5   previously recognized that a diagnosis of chronic pain syndrome can constitute a medically

6   determinable impairment. *See Myers v. Colvin*, 954 F. Supp. 2d 1163, 1172 (W.D. Wash. 2013).

7   Ms. Langdon's medical record includes notes of chronic abdominal pain diagnoses. *See* AR 218.

8   Nonetheless, the ALJ found the only diagnosed causes of Ms. Langdon's pain to be severe at

9   step two and addressed their impacts at steps four and five. *See Lewis*, 498 F.3d at 910-11.

10  Therefore, any error in failing to include chronic pain as a severe impairment was

11  "'inconsequential to the ultimate nondisability determination' in this particular case, and

12  therefore, harmless." *Myers*, 954 F. Supp. 2d at 1173 (quoting *Molina v. Astrue*, 674 F.3d 1104,

13  1115 (9th Cir. 2012)).[1]

14        Ms. Langdon also asserts that the ALJ failed to follow the "psychiatric review technique"

15  that Social Security Administration (SSA) regulations require. Dkt. 12, pp. 13-14; *see* 20 C.F.R.

16  § 404.1520a. In particular, Ms. Langdon contends that the ALJ failed to incorporate written

17  findings and conclusions applying the technique to her alleged personality disorders and

18  substance addiction disorders (listings 12.08 and 12.09). *See* 20 C.F.R. § 404.1520a(e)(4); AR

19  25-26. Ms. Langdon contends that because Dr. Collingwood listed both types of disorder, the

20  regulations required the ALJ to apply the technique to those disorders and document that

21  application. *See* AR 219.

22

23  ---
    [1] Although Ms. Langdon's reply brief appears to challenge the ALJ's discounting of her credibility, she did not raise
    such a challenge in her opening brief, so the Court declines to consider it. Dkt. 19, p.12; *see Zango, Inc. v.
    Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n. 8 (9th Cir. 2009) ("[A]rguments not raised by a party in an opening
    brief are waived.").

24

25

1    Ms. Langdon's argument with respect to personality disorders fails here for the same

2    reason it does above: Ms. Langdon did not present evidence that she actually suffered from that

3    impairment other than Dr. Collingwood's inclusion of it on a list. As noted above, Dr. Dixon

4    found that Ms. Langdon had no personality disorders. AR 834.

5    Similarly, with respect to substance addiction disorders, Dr. Collingwood's list is again

6    the only evidence Ms. Langdon points to that would indicate she has such a disorder. This

7    distinguishes Ms. Langdon's case from one in which a claimant presented a "colorable claim" of

8    a particular impairment. *See* Dkt. 12, p. 14; *Gutierrez v. Apfel*, 199 F.3d 1048, 1051 (9th Cir.

9    2000) ("'Since the record contained evidence of a mental impairment that allegedly prevented

10   claimant from working, the Secretary was required to follow the procedure for evaluating the

11   potential mental impairment set forth in his regulations and to document the procedure

12   accordingly.'" [quoting *Hill v. Sullivan*, 924 F.2d 972, 975 (10th Cir. 1991)]).

13   II.   The ALJ's Evaluation of the Medical Opinion Evidence

14   The ALJ is responsible for determining credibility and resolving ambiguities and

15   conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where

16   the evidence is inconclusive, "'questions of credibility and resolution of conflicts are functions

17   solely of the [ALJ]'" and this Court will uphold those conclusions. *Sample v. Schweiker*, 694

18   F.2d 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n. 7 (9th Cir.

19   1971)); *Morgan*, 169 F.3d at 601. As part of this discretion, the ALJ determines whether

20   inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether

21   certain factors are relevant" in deciding how to weigh medical opinions. *Morgan*, 169 F.3d at

22   603.

23   The ALJ must support his or her findings with "specific, cogent reasons." *Reddick*, 157

24   F.3d at 725. To do so, the ALJ sets out "a detailed and thorough summary of the facts and

25

conflicting clinical evidence," interprets that evidence, and makes findings. *Id.* The ALJ does not need to discuss all the evidence the parties present but must explain the rejection of "significant probative evidence." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). The ALJ may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. And the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

In general, the ALJ gives more weight to a treating physician's opinion than to the opinions of physicians who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Nonetheless, an ALJ need not accept a treating physician's opinion that "is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

To reject the uncontradicted opinion of either a treating or examining physician, an ALJ must provide "clear and convincing" reasons. *Trevizo*, 2017 WL 2925434, at *7. When other evidence contradicts the treating or examining physician's opinion, the ALJ must still provide "specific and legitimate reasons," supported by substantial evidence, to reject that opinion. *Id.* An ALJ should weigh the physician's opinion according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Id.*; *see* 20 C.F.R. § 404.1527(c)(2)-(6). Finally, a non-examining physician's opinion may constitute substantial evidence for an ALJ's findings if that opinion "is consistent with other independent evidence in the record." *Tonapetyan*, 242 F.3d at 1149.

A.    <u>Examining Physician: Dr. Gaffield</u>

In a March 2013 evaluation, Dr. Gary Gaffield noted that Ms. Langdon appeared anxious and had difficulty sitting. AR 823. He noted mild right-sided weakness and mild left-side hemiparesis (weakness) in her extremities, a positive Romberg test (indicating poor balance), limited range of motion in her cervical spine, and a resting tremor. AR 824. He observed that because of her balance problem, Ms. Langdon had trouble removing her footwear, could not hop, bend, or squat, could not walk on her heels, and struggled to walk in tandem. *Id.* And he observed that she was unable to lie prone due to abdominal pain. *Id.* Dr. Gaffield found that Ms. Langdon had limited range of motion in her cervical spine. *Id.*

Dr. Gaffield diagnosed Ms. Langdon with seizure disorder, left-sided weakness, and impaired balance post cerebral aneurysm, and with low back pain and "abdominal pain with a history of cholecystitis." AR 825. He concluded that Ms. Langdon could stand or walk for 6 hours of an 8-hour workday (with adequate breaks); had no limitations in sitting; could lift 20 pounds occasionally and 10 frequently; and could perform frequent manipulative activities. He further opined that she was limited to occasional postural activities and that, because of her balance and left-side weakness, she needed to avoid heights, unprotected surfaces, heavy equipment, steep ladders, multiple inclined planes or flights of stairs, and major obstacles in her path. AR 826.

The ALJ gave Dr. Gaffield's opinions "significant weight." AR 33. He noted that Dr. Gaffield examined Ms. Langdon and that his opinions were "consistent with exam findings." *Id.* Noting Dr. Gaffield's finding that Ms. Langdon had issues with her balance, however, the ALJ found that "the record does not indicate chronic problems with balance," that "[p]hysical exams show [Ms. Langdon] is ambulatory with a normal gait and no use of an assistive device," and that "[o]bjective images are mild or within normal limits." *Id.*

1    Ms. Langdon does not challenge Dr. Gaffield's specific bases for those opinions but

2    implies that because Dr. Gaffield "was provided no treatment records" whereas Dr. Sui Twe had

3    treated Ms. Langdon for sixteen years when Dr. Twe offered her opinions, the ALJ should have

4    accorded greater weight to Dr. Twe's opinions.

5    The ALJ did not err in evaluating Dr. Gaffield's opinions. Dr. Gaffield reviewed a

6    number of hospital records from the previous year, including a hepatobiliary iminodiacetic acid

7    (HIDA) scan, a computerized tomography (CT) scan of the pelvis, an abdominal ultrasound, a

8    hospital discharge summary, and an emergency room visit for cervical pain. AR 821. Although

9    Ms. Langdon contends that Dr. Gaffield reviewed an incomplete record, she does not specify

10    what records Dr. Gaffield was missing or why they may have changed his opinions. Dkt. 12, pp.

11    7-8. Moreover, despite expressing skepticism toward Dr. Gaffield's findings on Ms. Langdon's

12    balance, the ALJ included limitations in the RFC to account for poor balance. *See* AR 28

13    (limiting Ms. Langdon to occasionally climbing ramps and stairs, balancing, stooping, kneeling,

14    crouching, and crawling, and to never climbing ladders, ropes, or scaffolds).

15    B.    Treating Physician: Dr. Twe

16    Dr. Twe began treating Ms. Langdon in 1997. AR 893. She observed in a March 2013

17    questionnaire that Ms. Langdon suffered from chronic abdominal, pelvic, and lower back pain,

18    and that she had a weak grasp. AR 894, 896. Dr. Twe opined that Ms. Langdon's impairments

19    limit her to three hours sitting and four hours standing and walking in an eight-hour day; that she

20    could not sit continuously and would need to get up and move around every 15 minutes for 20

21    minutes at a time. Dr. Twe would limit Ms. Langdon to lifting five pounds frequently, ten

22    pounds occasionally, and never more, and to similar weights carrying. AR 896. Dr. Twe assessed

23    a marked limitation in Ms. Langdon's ability to perform fine and gross manipulations with her

24    left hand. AR 897. Dr. Twe further assessed Ms. Langdon as moderately limited in the right hand

25

1    and markedly limited in the left hand in grasping, turning, and twisting objects. AR 895-96. Dr.

2    Twe opined that Ms. Langdon's symptoms would worsen in a competitive work environment.

3    AR 897. She also opined that Ms. Langdon's neck condition would prevent her from keeping it

4    in a constant position, like looking at a computer screen or down at a desk. *Id.* Dr. Twe opined

5    that Ms. Langdon could not do full time work because her pain, fatigue, or other symptoms

6    would constantly interfere with her attention and concentration, and that she would need many

7    unscheduled rest breaks and would miss "about 20 days/month" of work. AR 898-99. Dr. Twe

8    wrote a one-page letter reiterating these opinions in February 2014. AR 959.

9         The ALJ found that Dr. Twe's opinions were inconsistent with the record. AR 33-34. He

10   noted that Dr. Twe "provide[d] no objective basis for [her] opinion;" that "[o]bjective images

11   typically indicate only mild or normal findings;" and that the record contained no support for Dr.

12   Twe's opinion that Ms. Langdon would miss 20 days of work per month. AR 33. The ALJ also

13   noted that "Dr. Twe makes no mention of the claimant's prescription abuse and alcohol use,

14   which undercuts the reliability of [her] opinion." AR 34.

15        The ALJ's finding that Dr. Twe provided no objective basis for her opinions was a

16   specific and legitimate to reject those opinions. *See Molina*, 674 F.3d at 1111. The record

17   supports that finding. Dr. Twe initially offered her opinion either in a check-box format or in

18   brief, conclusory answers to questions on a form. AR 894-99. (The letter Dr. Twe wrote repeated

19   the conclusions from the check-off form nearly verbatim. AR 959.) An "ALJ may 'permissibly

20   reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their

21   conclusions.'" *Molina*, 674 F.3d at 1111 (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir.

22   1996)). Moreover, Dr. Gaffield's opinion, offered around the same time, reached markedly

23   different conclusions and, as discussed above, did have support from objective findings. *See* AR

24

25

ORDER - 11

1    821. The ALJ thus gave specific, legitimate, and supported reasons to reject Dr. Twe's

2    contradicted opinion.

3    C.    Examining Physician: Dr. Dixon

4         Dr. Dixon examined Ms. Langdon on April 6, 2013. The record contains the results of the

5    psychological evaluation Dr. Dixon performed. AR 827-35. He observed based on Ms.

6    Langdon's performance on the Trail-Making Test parts A and B [2] that she "demonstrated

7    moderate to severe cerebral dysfunction, as well as impaired planning and cognitive

8    inflexibility." AR 832. He also opined that, among other limitations, Ms. Langdon had a poor to

9    fair ability to sustain concentration. AR 834. The ALJ singled out this conclusion as inconsistent

10   with the record. AR 34. Ms. Langdon contends that the ALJ erred in discounting Dr. Dixon's

11   opinion. Dkt. 12, p. 16; *see* AR 34. The Court agrees.

12        Neither of the reasons the ALJ offered for rejecting Dr. Dixon's opinion that Ms.

13   Langdon had poor to fair ability to sustain concentration were "specific and legitimate," nor are

14   they supported by the record. First, the ALJ stated that "[m]ental status exams throughout the

15   period at issue show no significant cognitive deficits." AR 34. While no "mental status exams"

16   are apparent in the record, and the ALJ cited none, the ALJ may have been referencing notes

17   from office visits in September, October, November, and December 2011 and May 2012. *See* AR

18   32. Ms. Langdon made those visits to follow up on her pain medication. AR 713, 717, 721, 725.

19   Dr. Kyong Ho Kim wrote at the first four visits that cognitive assessments were "unremarkable"

20   or "within normal limits," or that "[n]o abnormalities were detected." AR 714, 718, 722, 726.

21   Stasia Turner, ARNP made a similar note at the fifth visit. AR 691. But these providers gave no

22

23   _____

24   [2] "The comprehensive Trail-Making Test is a standardized set of visual search and sequencing tasks that measure
     attention and concentration, resistance to distraction and cognitive flexibility." AR 832.

25

1    indication what exams, if any, they performed on Ms. Langdon, and the cognitive assessment

2    was evidently not a focus of any of the visits. It is unclear whether those assessments were

3    equivalent to "mental status exams," as the only record of them consists of brief, conclusory

4    single sentences without explanation or observations. In contrast, Dr. Dixon supported his

5    opinion with several pages recounting the results of psychological tests. AR 827-35. To rely on

6    asserted inconsistencies with other items in the medical record, the ALJ needed to "consider

7    factors such as the length of the treating relationship, the frequency of examination, the nature

8    and extent of the treatment relationship, or the supportability of the opinion." *Trevizo*, 2017 WL

9    2925434, at *7 (citing 20 C.F.R. § 404.1527(c)(2)–(6)). The ALJ failed to do so in rejecting Dr.

10   Dixon's opinion.

11         Second, the ALJ stated that at Ms. Langdon's October 2010 hearing she testified to

12   "building birdhouses for a couple of hour[s] at a time, working in her garden, playing memory

13   games on the computer and using Facebook." The ALJ reasoned that this testimony

14   "demonstrates the ability to sustain concentration." AR 34. He likewise reasoned that Ms.

15   Langdon's testimony about her activities of daily life at the current hearing—cooking, cleaning,

16   and housework, "also indicates the ability to sustain concentration." *Id.*

17         An ALJ may reject a medical opinion regarding a claimant's mental health because the

18   claimant's activities of daily life contradict it, but only if substantial evidence supports that

19   conclusion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding that

20   inconsistency between doctor's opinion and claimant's "maintaining a household and raising two

21   young children, with no significant assistance from her ex husband" supported discounting the

22   doctor's opinion). The record must provide details about the nature, extent, and frequency of the

23

24

25

ORDER - 13

1    activities for them to "constitute 'substantial evidence' inconsistent with [an examining

2    physician's] informed opinion." *Trevizo*, 2017 WL 2925434, at *8.

3          The record does not support the ALJ's conclusion that Ms. Langdon's activities

4    contradict Dr. Dixon's opinion about her ability to concentrate. The record contains no

5    information as to whether Ms. Langdon's gardening, cooking, or housework occurred frequently,

6    how vigorous these activities were, or how long Ms. Langdon maintained any given activity. *See*

7    *Trevizo*, 2017 WL 2925434, at *8. And although the ALJ noted that Ms. Langdon "reported

8    building birdhouses for a couple of hour[s] at a time," this mischaracterizes Ms. Langdon's

9    testimony at the prior hearing. AR 34; *see* AR 134 (prior ALJ findings): Ms. Langdon did not

10   testify to "building birdhouses," but rather to decorating pre-built birdhouses by plastering them

11   and gluing on pieces of tumbled glass. AR 34, 240-42. And she did not testify to doing so for

12   two hours at a time, but rather "a couple of days a week." AR 241. She did not testify that she

13   performed for sustained periods this or any of the other activities the ALJ listed, and in fact

14   indicated that she struggled with Facebook. AR 240 ("I just did Facebook because I didn't quite

15   understand it."). It is unclear, in any case, how Facebook or computer games would relate to any

16   paid work activity, other than involving computers. These instead appear to be nothing more than

17   leisurely pastimes. *See id.* Because the reasons the ALJ offered to reject Dr. Dixon's opinion

18   were neither legitimate nor supported, the ALJ erred in evaluating that opinion. *See Trevizo*,

19   2017 WL 2925434, at *8; *Delaplain v. Comm'r of Soc. Sec. Admin.*, No. 2:15-CV-02439-HZ,

20   2017 WL 1234133, at *5 (D.Or. Mar. 17, 2017) (finding that activities ALJ cited did not

21   contradict doctor's opinion regarding limitations).

22          That error was not harmless, because it was not "'inconsequential to the ultimate

23   nondisability determination.'" *Molina*, 674 F.3d at 1115 (quoting *Carmickle*, 533 F.3d at 1162).

24

25

1   The ALJ's RFC stated that Ms. Langdon "has *average ability* to perform sustained work

2   activities (i.e., maintain attention, *concentration*, persistence, and pace) in an ordinary work

3   setting for 8 hours, 5 days a week or an equivalent work schedule." AR 28 (emphasis added).

4   Using the RFC, the vocational expert testified that Ms. Langdon could perform as a housekeeper,

5   cashier, or electronics worker/assembler. AR 36, 93. A reasonable ALJ fully crediting Dr.

6   Dixon's opinion could have concluded that Ms. Langdon could not perform any of these

7   occupations. *See Stout*, 454 F.3d at 1056 (holding that ALJ's error in failing to consider lay

8   testimony about limitations was not harmless where reasonable ALJ could conclude those

9   limitations precluded employment). This error thus requires reversal for the ALJ to properly

10  consider the medical evidence regarding Ms. Langdon's mental health impairments and their

11  limitations on her ability to work.

12  III.  <u>The ALJ's RFC Assessment</u>

13        The ALJ uses a claimant's residual functional capacity (RFC) assessment at step four of

14  the sequential evaluation process to determine whether the claimant can do his or her past

15  relevant work, and at step five to determine whether he or she can do other work. Social Security

16  Ruling (SSR) 96-8p, 1996 WL 374184 *2. The RFC is what the claimant "can still do despite his

17  or her limitations." *Id.*

18        A claimant's RFC is the maximum amount of work the claimant is able to perform based

19  on all of the relevant evidence in the record. *Id.* However, an inability to work must result from

20  the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those

21  limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing

22  a claimant's RFC, the ALJ must also discuss why the claimant's "symptom-related functional

23  limitations and restrictions can or cannot reasonably be accepted as consistent with the medical

24  or other evidence." *Id.* at *7.

25

1    The ALJ found Ms. Langdon had the RFC:

2        **To perform light work as defined in 20 CRF 404.1567(b) and 416.967(b)**
         **except she can occasionally climb ramps and stairs, balance, stoop, kneel,**
3        **crouch; and crawl; she can never climb ladders, ropes, or scaffolds; she is**
         **limited to frequent left handling; she must avoid moderate exposure to**
4        **hazards (dangerous machinery, unprotected heights, etc.); she is capable of**
         **completing simple routine tasks and established goals; she has average**
5        **ability to perform sustained work activities (i.e., maintain attention,**
         **concentration, persistence, and pace) in an ordinary work setting for 8 hours,**
6        **5 days a week or an equivalent work schedule within customary tolerances**
         **regarding employers rules for sick leave and absences.**
7
     AR 28 (emphasis in the original).
8
          Because, as discussed above, the ALJ erred in rejecting Dr. Dixon's opinion that Ms.
9
     Langdon had a poor-to-fair ability to concentrate, the ALJ's RFC assessment does not completely
10
     and accurately describe all of Ms. Langdon's cognitive functional capabilities. Accordingly, on
11
     remand the ALJ should reevaluate the medical evidence regarding Ms. Langdon's mental health
12
     impairments. The ALJ should then reassess Ms. Lamont's RFC and her ability to perform other
13
     work.
14
                                          CONCLUSION
15
          Based on the foregoing discussion, the Court finds the ALJ erred in determining Ms.
16
     Langdon to be not disabled. The Commissioner's decision to deny benefits therefore is
17
     REVERSED and this matter remanded for further administrative proceedings.
18
          Dated this 26th day of July, 2017.
19

20

21                                              *Theresa L. Fricke*
22                                              _____
                                                Theresa L. Fricke
23                                              United States Magistrate Judge

24

25

ORDER - 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

ORDER - 17